IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ULYSSES W. MCKINNEY, III, | § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:12-cv-1376-N (BF) |
| VERIZON COMMUNICATIONS, INC., | § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Verizon Communications, Inc. ("Verizon") has filed a motion for summary judgment in this *pro se* employment discrimination case brought under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* For the following reasons, the District Court should GRANT Verizon's motion.

**Background**

Plaintiff Ulysses W. McKinney, III, an African-American and Hispanic male, worked for Verizon from September 25, 1989 until his termination on or about April 4, 2011.[1] Def. MSJ App. at 1, ¶ 5; 6, ¶ 28; 22. Prior to his termination, Plaintiff held the position of Customer Zone Technician II ("CZT II") and was responsible for installing and maintaining telecommunication lines and equipment for voice, data, and network services. *See id.* at 1, ¶ 6; 14; 31. As a CZT II, Plaintiff was required to meet minimum performance requirements in various areas, including: (1) "I-Codes,"

---

[1] Plaintiff was originally hired by GTE Soutwest Inc. ("GTE"). When Verizon acquired GTE in June 2000, Plaintiff became a Verizon employee. Def. MSJ App. at 1, ¶ 5; 24.

which relate to service orders completed within 30-days of a customer-initiated trouble report; (2) "repeats," or trouble reports initiated within 30 days of a completed service order; and (3) "jobs per day" completed. *Id.* at 2, ¶ 9. The specific performance requirements are established annually by Verizon Area Managers and Directors, but generally CZT II's are expected to have a low percentage of I-Codes and repeats and a high number of jobs per day completed. *Id.*

Plaintiff reported to Debra Pfeifer, Verizon's Local Area Manager for Carrollton, Texas, from October 2008 to November 2009. *Id.* 135, ¶ 4; 136, ¶ 12. During this time, Plaintiff allegedly failed to meet the minimum performance requirements for the percentage of I-Codes and repeats, as well as the number of jobs per day completed. Def. MSJ App. at 135-36, ¶ 6. Pfeifer initially placed Plaintiff on a non-disciplinary, coaching performance improvement plan, and, when his performance did not improve, she escalated Plaintiff along Verizon's progressive disciplinary process. *Id.* at 136, ¶¶ 7-10. By November 2009, Plaintiff was on Phase III discipline. *Id.* at 141. At Phase III, Plaintiff was given until the end of October 2010 to improve his performance and establish consecutive three-month rolling averages that met the minimum performance requirements for his position. *Id.* at 4, ¶ 15 & 141. Plaintiff was warned that he could be terminated if he failed to meet the minimum performance requirements for any consecutive three-month period while he was on Phase III discipline. *Id.*

According to Plaintiff, the system for determining whether a CZT II meets the minimum performance requirements is unfair because Verizon supervisors have discretion to recode events that reflect negatively on an employee's performance. *See id.* at 47. For example, a supervisor may delete a "repeat" code on a trouble report if the technician has correctly repaired the line to the home, but is prevented from otherwise completing the service order because the customer is not home or some other circumstance outside the CZT II's control. *Id.* Also, supervisors have discretion to

assign service orders to technicians. Certain types of service orders, such as those for apartment customers, are easier to complete in a timely manner and less likely to result in a "repeat." *Id.* at 53. Plaintiff contends that Pfeifer discriminated against him because of his race by exercising her discretion in favor of white technicians. *See id.* at 51, 53. Pfeifer allegedly assigned easier service orders to white technicians and recoded negative events for white technicians, but not Plaintiff. Plaintiff further contends that Pfiefer added false documents to his personnel file which improperly indicated that she accompanied him on "ride-alongs" because he required additional training and supervision.

Plaintiff transferred to the Verizon location in Grapevine, Texas shortly after being placed on Phase III discipline and began reporting to Local Area Manager Chris Parks. *Id.* at 6, ¶ 24. When Plaintiff failed to meet the Phase III discipline requirements, Parks, with the approval of his supervisor Keith Stephens, gave Plaintiff additional time until February 2011 to improve his performance and avoid termination. *Id.* at 20, 21; 143, ¶ 8. Plaintiff still did not satisfy the performance requirements for the extended disciplinary period, and Parks ultimately recommended that Verizon terminate Plaintiff's employment for poor performance. *Id.* at 6, ¶ 27; 143, ¶ 10. Verizon terminated Plaintiff's employment effective April 4, 2011. *See id.* at 22.

Plaintiff filed the instant lawsuit on April 27, 2012 alleging race and age discrimination in violation of Title VII and the ADEA. Verizon now moves for summary judgment on all of Plaintiff's claims and causes of action. As grounds for its motion, Verizon argues that Plaintiff has abandoned his claim for age discrimination and cannot establish a prima facie case of race discrimination or rebut the legitimate, nondiscriminatory reason supporting his termination. Plaintiff has filed a response, and the issues are ripe for determination.

3

## Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A summary judgment movant who does not have the burden of proof at trial bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

## Analysis

Verizon initially contends that Plaintiff has abandoned his ADEA claim. Def. Br. at 14. Plaintiff does not dispute this contention, nor does he identify any evidence that would raise a material fact issue as to any age discrimination claim. Indeed, Plaintiff conceded at his deposition that there was "not really any evidence of age discrimination" and unequivocally stated that he no longer intended to pursue such a claim. Def. App. at 32-33. Under these circumstances, Verizon is entitled to summary judgment on Plaintiff's age discrimination claim.

Turning to the remaining claim, the Court observes that Plaintiff has not identified any direct evidence of race discrimination.[2] Therefore, he must rely on circumstantial evidence to prove his claim using the three-step "modified *McDonnell-Douglas* approach." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Under this approach, Plaintiff must first establish a prima facie case of discrimination, which creates a presumption that Verizon unlawfully discriminated against him. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) he was replaced by someone outside the protected class or other similarly situated employees were treated more favorably. *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). If Plaintiff establishes a prima facie case of discrimination, the burden shifts to Verizon to articulate a legitimate, nondiscriminatory reason for the employment action taken against Plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Verizon's burden is merely one of production, not proof, and involves no credibility assessments. *See, e.g., Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000). If Verizon meets its burden, Plaintiff may prove intentional discrimination by proceeding under one of two alternatives: (1) the pretext alternative or (2) the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Under the pretext alternative, Plaintiff must "offer sufficient evidence to create a genuine issue of material fact ... that [Verizon's] reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotation marks and citation omitted). Under the mixed-motives

---

[2] "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

alternative, Plaintiff must offer sufficient evidence to create a genuine issue of material fact "that [Verizon's] reason, while true, is only one of the reasons for [its] conduct, and another motivating factor is [Plaintiff's] protected characteristic." *Id.* (internal quotation marks and citation omitted).

Verizon contends that it is entitled to summary judgment on Plaintiff's race discrimination claim because he cannot establish the second or fourth prongs of his prima facie case. Def. Br. at 17. More specifically, Verizon argues that Plaintiff was no longer qualified for a CZT II position because he failed to meet the minimum performance requirements with respect to I-codes, repeats, and jobs per day completed, nor can he establish that similarly-situated employees outside his protected class were treated more favorably. *Id.* Assuming, without deciding that Plaintiff was qualified for the CZT II position, the Court agrees that Plaintiff has failed to raise a genuine fact issue with respect to whether he was treated differently from any similarly situated employee with respect to his termination.

In a disciplinary termination case such as this one, Plaintiff must show that Verizon "gave preferential treatment to another employee under 'nearly identical' circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye*, 245 F.3d at 514 (internal quotations and citations omitted). Although Plaintiff contends that he was treated less favorably than unidentified white employees who allegedly were not disciplined or terminated for "indiscretions" in work performance and attendance, *see* Plf. MSJ Resp. at 3, he does not point to any evidence to support his contention. In particular, Plaintiff fails to specifically identify any non-African-American or non-Hispanic CZT II who failed to meet the minimum performance requirements at issue for as long as Plaintiff and was not placed on disciplinary status or terminated. Plaintiff even testified at his deposition that he has no knowledge

of any non-African-American or non-Hispanic CZT II who failed to meet the minimum performance requirements for six, twelve, or twenty-four months in a row, as Plaintiff did. Def. MSJ App. at 69-70. The vague, unsubstantiated, and unverified assertions to the contrary that Plaintiff makes in his response are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Without some evidence that he was treated differently from a similarly situated employee, Plaintiff cannot raise a genuine fact issue on an essential element of his prima facie case. Verizon is thus entitled to summary judgment on Plaintiff's claim for race discrimination.

Even assuming Plaintiff could establish a prima facie case of discrimination, Verizon has articulated a legitimate, nondiscriminatory reason for terminating his employment. Verizon has produced evidence that Plaintiff was terminated for consistently failing to meet minimum performance requirements. *See, e.g.*, Def. MSJ App. at 22. Plaintiff has failed to rebut this explanation with evidence that Verizon's decision was based on race. Instead, Plaintiff relies on his own subjective belief to establish discrimination. *Id.* at 66. Plaintiff's subjective beliefs about discrimination, without more, are simply not enough to survive summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). Nor has Plaintiff identified any evidence that would support a finding of pretext. He offers only conclusory and wholly unsubstantiated assertions in his response that documents in his personnel file were "falsified." *See* Plf. MSJ Resp. at 4, 5, 6. Plaintiff has thus failed to raise a genuine fact issue as to whether Verizon discriminated against him on the basis of his race. Accordingly, Verizon is entitled to summary judgment on Plaintiff's race discrimination claim.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the District Court GRANT Verizon's motion for summary judgment (Doc. 33) and DISMISS with prejudice all of Plaintiff's claims and causes of action.

SO RECOMMENDED, *August 30*, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).